**FILED** ⁂

**JUNE 16, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**RECEIVED**

JUN 1 0 2008
6-10-2008
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

ANDREW LAMON,

Plaintiff

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

Roger E. WAlKER, Jr.

JERRY L. McCANN

JERRY Baldwin

Michael cheek

Leslie Turner

(Enter above the full name of ALL
defendants in this action.  Do not
use "et al.")

Case No: 08-C-0910
(To be supplied by the Clerk of this Court)

**CHECK ONE ONLY:**            **AMENDED COMPLAINT**

✓        **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983**
         **U.S. Code** (state, county, or municipal defendants)

_____    **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE**
         **28 SECTION 1331 U.S. Code** (federal defendants)

_____    **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING."  FOLLOW THESE INSTRUCTIONS CAREFULLY.*

THE Honorable Marvin E. Aspen's "Original" Copy

I.  **Plaintiff(s):**

    A.   Name: ANDREW Lamon

    B.   List all aliases: NONE

    C.   Prisoner identification number: R-16056

    D.   Place of present confinement: Stateville, corr, center

    E.   Address: P.O. box 112, Joliet, Il 60434.

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II.  **Defendant(s):**

(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

    A.   Defendant: Roger E. Walker, Jr.

         Title: Prison director

         Place of Employment: Illinois dept. of corrections

    B.   Defendant: TERRY L. McCANN

         Title: WARden

         Place of Employment: Stateville, corr, center

    C.   Defendant: Jerry Baldwin

         Title: Counselor

         Place of Employment: Stateville, corr, center

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

Revised 9/2007

D. Defendant: Michael Cheek
   Title: Administrative Review Board
   Place of employment: Springfield, Il

E. Defendant: Leslie Turner
   Title: Internal Affairs (I.A.)
   Place of employment: Stateville Corr.
   Center.

III.    **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A.    Name of case and docket number: Andrew Lamon. R-16056 V. Roger E. Walker, et al.,

B.    Approximate date of filing lawsuit: February 12th, 2008

C.    List all plaintiffs (if you had co-plaintiffs), including any aliases: _____
Andrew Lamon.
NA
NA

D.    List all defendants: Roger E. Walker, Terry L. McCann, Jerry Baldwin, Michael Cheek, Leslie Turner.

E.    Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): Northern District, Eastern division

F.    Name of judge to whom case was assigned: The Honorable Marvin E. Aspen

G.    Basic claim made: Eighth Amendment violation, deliberate indifference to inmates safety

H.    Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): still Pending, this is an Amended complaint.

I.    Approximate date of disposition: ?

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

**IV.    Statement of Claim:**

State here as briefly as possible the facts of your case.  Describe how each defendant is involved, including names, dates, and places.  **Do not give any legal arguments or cite any cases or statutes.**  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  (Use as much space as you need.  Attach extra sheets if necessary.)

1). Plaintiff alleges, contends that defendants, correctional officials, have violated Plaintiffs constitutional Rights by acting with deliberate indifference to his safety.

More specifically, Plaintiff alleges that he has been denied Placement in Protective custody at the statesville correctional center, despite defendants knowledge that he faces imminent danger from enemy gang members in the Prisons general Population.

2). Plaintiff is suing all defendants in their individual capacities, for nominal and punitive damages.

3). Plaintiff, contends that defendant, Terry L. McCann, after being asked repeatedly by This Honorable Court, to investigate the

4

Plaintiffs situation. (see exhibits. Feb 19th 2008, April 3rd. 2008 docket entries). moreover, defendants have acted with deliberate indifference to Plaintiffs safety, where while in general Population, (F-House), Plaintiff, requested Protective custody because of death threats by gang members, specifically "Gangster disciples" friends of Daniel smith, that defendants, while being aware of said threats of imminent danger, Refused to allow Plaintiff to sign into P.C., sent the Plaintiff further into general Population and insisted that threats of death "is no emergency. (see. Exhibit); and meeks decree).

4). Defendant Roger E. Walker, Jr. et al, has actual Knowledge of impending harm as set forth where Plaintiff complained directly to him about these specific death threats (see. Exhibits

5). Defendants stand in violation of the meeks decree. (see (C) 1-4

5

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**HEARING OF ADMINISTRATIVE REVIEW BOARD**


*DATE OF HEARING*: November 3, 2006

*INSTITUTION:* Stateville Correctional Center, Stateville, Illinois

*GRIEVANT NAME:* Andrew Lamon, Register No. R16056

*BOARD MEMBERS PRESENT*: Melody J. Ford, Administrative Review Board Chairperson, Office of Inmate Issues, Illinois Department of Corrections.

Grievant was personally interviewed by the Administrative Review Board. All information submitted to the Board by the Grievant, and the institution related to the issue being grieved, was reviewed. Issues warranting further action / consideration were discussed with the Stateville Correctional Center administration.

Nature of Grievance: Offender Lamon is grieving denial of protective custody.

Findings: The Board notes the Offender is currently serving 35 years for Aggravated Criminal Sexual Assault; Possession of a Controlled Substance, with a custody date of October 3, 2002 and a projected release date of April 3, 2030. The Grievant has been housed at Stateville Correctional Center since August 9, 2006. No Clinical concerns noted.

Grievant was transferred to the current facility from Pontiac Correctional Center for the reasoning: Segregation release. An affiliation with a Security Threat Group is not noted. The Board notes Grievant has declared no enemies at Stateville Correctional Center and has not been declared as an enemy.

The Board reviewed the Protective Custody vote sheet dated August 23, 2006. Grievant requested Protective Custody placement, stating the following: Offender stated he keeps getting beaten up by gangs, specifically the Black P-Stones and the Gangster Disciples. The no-vote rationale indicates no sufficient verifiable information to warrant Protective Custody placement. The CAO concurred on September 1, 2006.

Offender's statement: Offender Lamon stated he did not get along with his cell mate at Pontiac and refused housing. He was placed in segregation and transferred to Stateville upon release. He stated he was beaten up in 2004 at Menard. He stated he is from Iowa and is not affiliated with any STG.

Offender Lamon's statements were not able to be substantiated by Clinical Services or Internal Affairs.

Recommendations: Based on a total review of all available information, it is the opinion of the Board that the Grievant has not provided sufficient verifiable information to warrant the Offender's retention in Protective Custody, and therefore, recommends the Offender be placed in general population.


FOR THE BOARD: _____
Melody J. Ford
Administrative Review Board Chairperson
Office of Inmate Issues


CONCURRED: _____  November 6, 2006
Roger E. Walker Jr.
Director


cc:  Warden Terry McCann, Stateville Correctional Center
     Andrew Lamon, Register No. R16056

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**HEARING OF ADMINISTRATIVE REVIEW BOARD**

*DATE OF HEARING*: 12/20/07

*INSTITUTION*: Stateville Correctional Center, Joliet, Illinois

*GRIEVANT NAME*: Andrew Lamon, Register No. R16056

*BOARD MEMBERS PRESENT*: Michael T Cheek, Administrative Review Board Chairperson, Office of Inmate Issues, Department of Corrections.

Grievant was personally interviewed by the Administrative Review Board. All information submitted to the Board by the Grievant, and the institution related to the issue being grieved, was reviewed. Issues warranting further action / consideration were discussed with the Stateville Correctional Center Administration.

Nature of Grievance: Inmate Lamon is grieving denial of Protective Custody at Stateville Correctional Center.

The Board notes the inmate is currently serving 30 years, 5 years (CS), for aggravated criminal sexual assault/ other amount 1&2, with a custody date of 10/03/02. The Grievant has been housed at Stateville Correctional Center since 08/09/06.

The Grievant has Daniel Smith as declared enemies at Stateville Correctional Center.

Inmate Lamon is affiliated with the no one per OTS.

The Board reviewed the Protective Custody Vote sheet dated 10/31/07. Grievant requested Protective Custody placement stating the following: First I want to submit that my enemy Daniel Smith B44381 D house, cell 931. He is an active member of the gangster disciples and Stateville I.A. is aware of this fact. Smith's A.K.A. is D-Money. I have at the hand of this gang-member, been threatened with physical violence in cell #931 for the past few months, intimidated regularly, Smith became so comfortable with the aggressive behavior that he was exhibiting towards me that on the commissary of 10/05/07, he took my commissary slip and filled it out himself and threatened me with violence for objecting to his out right extortion. Smith while I was asleep touched my rear-end, when I woke up he jumped up on his bunk and pretended to be watching his T.V. Whether or not Smith is homosexual is unclear to me, however he alluded to the fact that his gang did allow homosexual activity among them, once a member became a certain age. Moreover, Smith on more than one occasion referred to me as a bitch boy on this point I must be pellucid I am not gay, in fact I have 6 children and 3 grandchildren. It must be stated as well that I have not and am not affiliated with any gang and review of my prison file will support this assertion. Also, I recognize that by me actually giving this inmate's name as well as exposing his actions that the G.D.'s will be after me, but I told C/O L. Turner in I.A. that I've been sent to prison as a punishment, not for punishment of another inmate. Smith swore that if I checked into protective custody that he was going to check in right behind me and fuck me up and that there is nowhere in Illinois that I can go and be safe. Having said all of this, I declare to you that I fear for my life and respectfully request that you allow me to remain in protective custody.

Inmate's statement: Inmate Lamon stated that his cellmate was a gangster disciple and that he has been having problems with him. State he is trying to extort him out of commissary items, and threatened him if he told. Stated that he felt inmate Smith touch him in his buttocks area while sleeping. Inmate Smith also chocked him, and made him add items to his commissary list for him. Inmate Lamon stated that he has a sex case and this may be a reason for the harassment.

This office reviewed information provided by Internal Affairs. It is noted that Lamon has Smith listed as a KSF.

Recommendations: Based on a review of all information it is the opinion of the Board that the Grievant **has not** provided sufficient information to warrant the Offender's retention in Protective Custody. Offender Lamon will be kept separate from Smith as records indicate.

*FOR THE BOARD*: _____

Michael T Cheek
Administrative Review Board Chairperson
Office of Inmate Issues

*CONCURRED*: _____    January 8, 2008

Roger E. Walker, Jr.
Director

cc:    Warden McCann, Stateville Correctional Center
Andrew Lamon R16056

COMMITTED PERSON'S GRIEVANCE

| Date: | Committed Person: (Please Print) ANDREW LAMON | ID#: R-16056 |

| Present Facility: STATEVILLE. CORR. CTR. | Facility where grievance issue occurred: STATEVILLE. CORR. CENTER |

**NATURE OF GRIEVANCE:**

☐ Personal Property  ☐ Mail Handling  ☐ Restoration of Good Time  ☐ Disability
☒ Staff Conduct  ☐ Dietary  ☐ Medical Treatment  ☒ Other (specify): EMERGENCY
☐ Transfer Denial by Facility  ☐ Transfer Denial by Transfer Coordinator

☐ Disciplinary Report: ___/___/___
Date of Report — Facility where issued

Note: Protective Custody Denial may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: COMMITTED PERSON, ANDREW LAMON, R-16056, Currently Housed in General Population. F-House, Cell # 413, requests Protective Custody Placement whereby Gang members. He has been threatened with being hurled off the Four (4) Gallery rail to his death. If and when he comes out of his cell, # 413. (see. Attached Affidavit of, Lamar Ewing). Committed Person, Andrew Lamon, R-16056. is in imminent Danger of serious physical harm and or, Death.

Relief Requested: THAT, Committed Person, Andrew Lamon, R-16056, be Protected From Harm at the Hands of other inmates And Gang members.

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____  R-16056  4/12/08
Committed Person's Signature  ID#  Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 4/14/08  ☐ Sent directly to Grievance Officer  ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: You are in PC now.

E. Butkiewicz _____  _____  4/29/08
Print Counselor's Name  Counselor's Signature  Date of Response

---

**EMERGENCY REVIEW**  ARBK 1-16-08

Date Received: 4/15/08  Is this determined to be of an emergency nature?  ☐ Yes; expedite emergency grievance
☒ No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

W. Mc Caun (ph) _____  4/15/08
Chief Administrative Officer's Signature  Date

I've' been forced to live in complete fear for my life since being placed in General Population, F-House, Cell # 413.

I'm afraid to go to the shower, the recreation yard and I've refused Dental Passes sent to me on 4/7/08 and 4/11/08 for fear of these threats being carried out.

Currently, I have a civil rights claim pending and maybe thats why I keep being ignored. However, if you would talk to me or even attempt to "substantiate" my fears I have no problem resolving my claim.

RESPECTfully,

F-House, Cell # 413

## NOTICE OF FILING  /  PROOF OF SERVICE

To: ROGER E.WALKER,Jr.
Prison Director
1301 Concordia Court
Springfield,Il 62794-9277.

To: TERRY L.MCCANN
Stateville,Warden
Route 53,P.O.box 112
Joliet,Il 60434.

To: MIKE CHEEK
Administrative Review Board
1301 Concordia Court
Springfield,Il 62794-9277.

To: JERRY BALDWIN
X-house Counselor
Route 53,P.O.box 112
Joliet,Il 60434.

To: L.TURNER
Internal Affairs (I.A.)
Route 53,P.O.box 112
Joliet,Il 60434.

To: TAMMY GARCIA
(A.R.B.)Grievance Liason
Route 53,P.O.box 112
Joliet,Il 60434.

Please take notice that on,/ /16/2008,I mailed to the above-list-
ed prison officials,**all** a verified notice informing them that,in-
mate,**Andrew Lamon**,R-16056,is in imminent danger of serious physi-
cal harm at the hands of other prisoners. As set forth in my re-
quests for protective custody,of October 13th,2007.

And that the undersigned certifies that proper notice and service
copy has been served to the above-listed prison officials,by plac
ing the same in a sealed envelope,postage paid and depositing it
in the institutional mail at the Stateville correctional center,
Route 53,P.O.box 112,Joliet,Il 60434.

**STATE OF ILLINOIS** )
                      ) SS:
**COUNTY  OF WILL**   )

Under penalties provided pursuant to section **735 ILCS 5/1-109** of
the Code of Civil procedure and **28 U.S.C.sec.1746.**

Date: / /16/2008

_Andrew Lamon_
Andrew Lamon,R-16056
Stateville,corr,center
Joliet,Illinois,60434.
Route 53,P.O.box 112.

**Inmate.**

/ //6/2008

STATE OF ILLINOIS,DEPARTMENT OF
CORRECTIONS,<u>PRISON OFFICIALS</u>:

ATTN: ROGER E.WALKER,Jr.,
TERRY L.MCCANN,MIKE CHEEK,
JERRY BALDWIN,TAMMY GARCIA,
AND, L. TURNER.

RE:    VERIFIED NOTICE,IN REGARDS TO THE DENIAL OF PROTECTIVE
CUSTODY,(P.C.),TO THE ABOVE-LISTED PRISON OFFICIALS,
THAT,ANDREW LAMON,R-16056,HAS COMPLAINED TO SAID PRISON
OFFICIALS,INFORMING THEM THAT,HE IS IN IMMINENT DANGER
OF SERIOUS PHYSICAL HARM AT THE HANDS OF OTHER INMATES
AND THAT SAID PRISON OFFICIALS ARE AWARE OF THE SUBSTANT-
IAL RISK OF HARM TO,ANDREW LAMON,AND SAID PRISON OFFICIALS
HAS DISREGARDED MY PLEA FOR SAFETY AND REFUSED TO PROTECT
ME.

### BACKGROUND

On October 8th,2007,I requested protective custody,I was
screened by c/o L.Turner,Internal Affairs (I.A.),and placed in
temporary (p.c.). On October 13th,2007,X-house Counselor,Jerry
Baldwin,presented me with the official form to apply for,(p.c.)
I filled the form out and returned it the same day.
On November 13th,2007,Counselor Baldwin,informed me that I had
been denied protective custody by the Warden. I grieved that dec-
ision and on the same day wrote Warden,Terry L.McCann,requesting
reconsideration of the denial of (p.c.).
To-date,I have had <u>no</u> response from the warden in regards to my
request.
On December 20th,2007,The Administrative Review Board,Mike Cheek,
in a final decision,denied me entry into,**protective custody**.

I now bring this instant verified notice,which **all** of the
above prison officials were mailed a copy of on / //6 /2008.
ATTN: To be **pellucid**,I am in **imminent danger** of <u>serious physical</u>
<u>harm</u>,and it is **palpable** that a <u>substantial risk to my safety exi-</u>
<u>sts.</u>

(1)

## VERIFIED NOTICE TO PRISON OFFICIALS

1). "prison officials have a duty...to protect prisoners from violence at the hands of other prisoners".

2). Imate,in his request for protective custody,on October 13th, 2007,has shown that,he is incarcerated under conditions posing a substantial risk of imminent danger,serious harm of physical violence to him and that the denial of protective custody,**forces** him into an unsafe environment,(**F-house**),where he has no other recourse but to await a tragic event,such as the imminent assault,before being accepted into protective custody.

3). Hereby this instant notice,inmates allegations as contained in his request for protective custody,inmate contends that,where X-house Counselor,and the Warden denied his (P.C.),request and he grieved that decision and then requested reconsideration from the Warden to no avail and where the Administrative Review Board,has denied inmate protective custody that,the prison officials,**Supra**, were/is aware of the imminentdanger,impending and substantial threat of physical violence to this inmates safety,where he has continuously complained to these prison officials.

**FN.1.** This inmate has grieved the denial of protective custody to the warden and the Administrative Review Board,thereby exhausting **all** Administrative remedies.

**FN.2.** This instant verified notice to prison officials,is accompanyied by inmates ,Affidavit of Affirmation under penalty of perjury.

    **Wherefore**,inmate Andrew Lamon,respectfully request that the above-stated prison officials reconsider the refusal to admit this inmate entry into protective custody.

                                        Very Truely Yours,

                                        Andrew Lamon,R16056
                                        Route 53,P.O.box 11
                                        Joliet,Il 60434.

XC:
Roger E.Walker                                  Inmate.
Terry L.McCANN
Jerry Baldwin
L. Turner
Administrative Review Board,Tammy Garcia
Administrative Review Board,Mike Cheek

## AFFIDAVIT OF AFFIRMATION UNDER PENALTY OF PERJURY

I, Andrew Lamon,R-16056,inmate at the Stateville Correct-
ional center,and **Affiant**,do hereby declare and affirm under penal-
ty of perjury as defined in **735 ILCS 5/1-109,28 U.S.C.1746 or 18
U.S.C.1621**,that everything contained herein is true and accurate
to the best of my knowledge and belief.
I further declare and affirm that the contents of the foregoing
document(s),is/are known to me and is/are accurate to the best of
my knowledge and belief.
Finally,I do declare and affirm that the matter at hand is not
taken either frivolously or maliciously and that I believe the
foregoing matter is taken in good faith.

Signed this _16TH_ day of _JANUARY_ ,2008.

Andrew Lamon,R-16056
Affiant.

XC:
Roger E.Walker
Terry L.McCANN
Jerry Baldwin
L. Turner
Administrative Review Board ,Tammy Garcia
Administrative Review Board, Mike Cheek

C.C.

(3)

1 /16 /2008

ILLINOIS DEPARTMENT OF
CORRECTIONS,DIRECTOR:
**ATTN: ROGER E.WALKER,Jr.**
1301 Concordia Court
Springfield,Illinois 62794-9277.

RE:      **LETTER OF COMPLAINT,TO THE PRISON DIRECTOR,Supra,OF THE
          EXCESSIVE RISK OF SERIOUS PHYSICAL HARM AND IMMINENT
          DANGER THE DENIAL OF PROTECTIVE CUSTODY,PLACES THIS INM-
          ATE IN.**

        This letter of complaint,is in regards,**specifically**,to
the allegations as set forth in my request for protective custody
(P.C.).
As you are aware,I was denied the protection from violence at the
hands of other prisoners,by the Administrative Review Board,Mike
Cheek,on December 20th,2007. That said,I am through this instant
letter informing you that,I face imminent danger here in general
population,(**F-house**),where the prison officials **Infra,[FN.-1]**has
refused to act and have obviously disregarded my plea for help in
letters and my requesting protective custody.
I have exhausted **all** institutional/Administrative remedies avail-
able to me and ask that you intercede in this matter by placing
me in (p.c.).

**FN.1 - ROGER E.WALKER,Jr,TERRY L.McCann,MIKE CHEEK,L.TURNER,JERRY
BALDWIN,AND TAMMY GARCIA.**

                                  Very Truely yours,

                                  Andrew Lamon,R-16956
                                  Statevill,corr,center
                                  Route 53,P.O.box 112
                                  Jolist,Illinois 60434

                                  **Inmate.**

**ATTN:** ILLINOIS DEPARTMENT OF                    1 /16 /2008
CORRECTIONS,PRISON OFFICIALS,
Terry L.McCann,Mike Cheek,
Jerry Baldwin,Tammy Garcia,
and L.Turner.


RE:    **LETTER OF COMPLAINT,TO THE ABOVE-LISTED PRISON OFFICIALS
       OF THE EXCESSIVE RISK OF SERIOUS PHYSICAL HARM AND IMM-
       INENT DANGER,THE DENIAL OF PROTECTIVE CUSTODY,PLACES THIS
       INMATE IN.**


       This letter of complaint,is in regards,**specifically**,to the
allegations as set forth in my request for protective custody(p.c)
on October 13th,2007.
I have complained to each of you,whether through letters and/or,
in person and I've been pellucid that,I fear for my safety and
that,in general population **(F-HOUSE)**,I am in imminent danger of
violence at the hands of other prisoners,and again,ask to be pro-
tected by you,i.e.,**prison officials.**

**Finally,**I have complained to you all concerning my safety,to no
avail.
In a nut-shell,although,I have been denied,(p.c.),by the Warden,
which I grieved and the Administrative Review Board,on December
20th,2007. I ask respectfully,where all of you know of the risk
to my safety,or a high probability thereof,to please,**do something**
to protect me from harm at the hands of other prisoners,as I have
exhausted **all** institutional/Administrative remedies and remain in
**imminent danger.**


                                        Very Truely Yours,


                                        Andrew Lamon,B-16056
                                        Stateville,corr,center
                                        Route 53,P.O.box 112
                                        Joliet,Illinois 60434.

XC:
Terry L.McCann,- Warden
Jerry Baldwin, - X-house Counselor
Mike Cheek, - Administrative Review Board
L.Turner, - Internal Affairs
Tammy Garcia, - Administrative Review Board

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | MARVIN E. ASPEN | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 0910 | **DATE** | Febrary 19, 2008 |
| **CASE TITLE** | Andrew Lamon (#R-16056) vs. Roger E. Walker, et al. | | |

**DOCKET ENTRY TEXT:**

The plaintiff's motion for leave to proceed *in forma pauperis* [#3] is granted. The court orders the trust fund officer at the plaintiff's place of incarceration to deduct $3.80 from the plaintiff's account for payment to the clerk of court as an initial partial filing fee, and to continue making monthly deductions in accordance with this order. The clerk is directed to: (1) send a copy of this order to the trust fund officer at the Stateville Correctional Center; (2) issue summonses for service on the defendants by the U.S. Marshal; (3) send the plaintiff a Magistrate Judge Consent Form and Instructions for Submitting Documents along with a copy of this order; and (4) mail a copy of the order to the Warden of the Stateville Correctional Center. The plaintiff's motion for a preliminary injunction and temporary restraining order [#4] is denied. However, the court requests that Warden McCann investigate the plaintiff's situation and take any reasonable measurers he should deem necessary to protect the plaintiff from harm at the hands of fellow inmates.

■ **[For further details see text below.]**                                          Docketing to mail notices.



## STATEMENT

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, correctional officials, have violated the plaintiff's constitutional rights by acting with deliberate indifference to his safety. More specifically, the plaintiff alleges that he has been denied placement in protective custody at the Stateville Correctional Center despite the defendants' knowledge that he faces imminent danger from enemy gang members in the prison's general population.

The plaintiff's motion for leave to proceed *in forma pauperis* is granted. Pursuant to 28 U.S.C. § 1915(b)(1), the plaintiff is assessed an initial partial filing fee of $3.80. The trust fund officer at the plaintiff's place of incarceration is authorized and ordered to collect the partial filing fee from the plaintiff's trust fund account and pay it directly to the clerk of court. After payment of the initial partial filing fee, the plaintiff's trust fund officer is directed to collect monthly payments from the plaintiff's trust fund account in an amount equal to 20% of the preceding month's income credited to the account. Monthly payments shall be forwarded to the clerk of court each time the amount in the account exceeds $10 until the full $350 filing fee is paid. All payments **(CONTINUED)**

| | mjm |
|---|---|

Page 1 of 3

## STATEMENT

shall be sent to the Clerk, United States District Court, 219 S. Dearborn St., Chicago, Illinois 60604, attn: Cashier's Desk, 20th Floor, and shall clearly identify the plaintiff's name and this case number. This payment obligation will follow the plaintiff wherever he may be transferred.

Under 28 U.S.C. § 1915A, the court is required to conduct a prompt threshold review of the complaint. Here, accepting the plaintiff's allegations as true, the court finds that the plaintiff has articulated a colorable federal cause of action. The Constitution imposes on jail officials a duty to "take reasonable measures to guarantee the safety of the inmates and to protect them from harm at the hands of others." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). To state an actionable Eighth Amendment claim, the plaintiff must plead that the defendant has acted with deliberate indifference to a substantial risk of harm; the plaintiff has satisfied that pleading standard. While a more fully developed record may establish that the plaintiff is not being exposed to imminent danger, the defendants must respond to the plaintiff's allegations.

The clerk shall issue summonses forthwith and send the plaintiff a Magistrate Judge Consent Form and Instructions for Submitting Documents along with a copy of this order.

The United States Marshals Service is appointed to serve the defendants. Any service forms necessary for the plaintiff to complete will be sent by the Marshal as appropriate to serve the defendants with process. The U.S. Marshal is directed to make all reasonable efforts to serve the defendants. With respect to former correctional employees who no longer can be found at the work address provided by the plaintiff, the Illinois Department of Corrections shall furnish the Marshal with the defendant's last-known address. The information shall be used only for purposes of effectuating service [or for proof of service, should a dispute arise] and any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file, nor disclosed by the Marshal. The Marshal is authorized to mail a request for waiver of service to the defendants in the manner prescribed by Fed. R. Civ. P. 4(d)(2) before attempting personal service.

The plaintiff is instructed to file all future papers concerning this action with the clerk of court in care of the Prisoner Correspondent. The plaintiff must provide the original plus a judge's copy of every document filed. In addition, the plaintiff must send an exact copy of any court filing to the defendants [or to defense counsel, once an attorney has entered an appearance on their behalf]. Every document filed must include a certificate of service stating to whom exact copies were mailed and the date of mailing. Any paper that is sent directly to the judge or that otherwise fails to comply with these instructions may be disregarded by the court or returned to the plaintiff.

The plaintiff's motion for a preliminary injunction and temporary restraining order is denied at this time. The prerequisites to the granting of a preliminary injunction are well established. "To prevail on a motion for a preliminary injunction, the moving party must demonstrate (1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) an irreparable harm will result if the injunction is not granted." *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007), *quoting FoodComm Int'l. v. Berry*, 328 F.3d 300, 303 (7th Cir. 2003). If the **(CONTINUED)**

## STATEMENT

moving party meets the first three requirements, then the district court balances the relative harms that could be caused to either party. *Woods*, 496 F.3d at 622, *citing Incredible Tech., Inc. v. Virtual Tech., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005). A preliminary injunction is an "extraordinary remedy" intended to minimize the hardship to the parties and to preserve the *status quo* pending a more considered decision of the merits when possible. *Indiana Civil Liberties Union v. O'Bannon*, 259 F.3d 766, 770 (7th Cir. 2001).

Here, the plaintiff has not met his burden. The plaintiff seeks an order directing his placement in protective custody and his transfer out of the Stateville Correctional Center. However, attached to the complaint are copies of grievances explaining why the plaintiff's requests for placement in protective custody at Stateville have been denied at all levels of review at least twice. Correctional officials have been unable to substantiate the plaintiff's fears about dangers from gang members in the general population. The court must give substantial deference to the professional judgment of correctional officials in connection with matters of prison administration. *See, e.g., Hammer v. Ashcroft*, — F.3d —, 2008 WL 125956, at *5 (7th Cir. 2008). The court cannot, on the basis of the undeveloped record, overrule the decision to house the plaintiff in the general population at the Stateville Correctional Center. The plaintiff has not demonstrated that emergency relief is warranted.

Nevertheless, because the plaintiff claims to be in imminent danger, the court requests that the warden re-investigate the plaintiff's situation and re-evaluate his professed need for placement in protective custody. The warden need not file a response to this order; the court simply requests that Warden McCann look into the matter and take any reasonable steps he may deem necessary to protect the plaintiff from harm at the hands of fellow inmates.

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | MARVIN E. ASPEN | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 0910 | **DATE** | April 3, 2008 |
| **CASE TITLE** | Andrew Lamon (#R-16056) vs. Roger E. Walker, et al. | | |

**DOCKET ENTRY TEXT:**

The plaintiff's motion for reconsideration [#13] is denied. As discussed in the court's Minute Order of February 19, 2008, the court will not order the plaintiff's placement in protective custody or his transfer out of Stateville based solely on the plaintiff's say-so, particularly because the plaintiff's own exhibits reflect that correctional officials have rejected his claims at multiple levels of review. The plaintiff may renew his request for preliminary injunctive relief once counsel has entered an appearance for the defendants and can respond to any contention that the plaintiff is in danger. However, the Clerk is directed to mail a copy of the order to the Warden of the Stateville Correctional Center. The court once again requests that Warden McCann investigate the plaintiff's situation and take any reasonable measurers he should deem necessary to protect the plaintiff from harm at the hands of fellow inmates.

■ [Docketing to mail notices.]



mjm

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF Illinois

**RECEIVED**

MAR 3 2008

ANDREW LAMON,

  PLAINTIFF,

 - VS -

ROGER E. WALKER, JR., et al.,

  DEFENDANTS,

)
)
)
)
)
)
)
)

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CASE NO. 08 C 0910

MARVIN E. ASPEN

JUDGE PRESIDING.

### NOTICE OF FILING

TO:
 MICHAEL W. DOBBINS
U.S. DISTRICT COURT CLERK
219 SOUTH DEARBORN ST.
CHICAGO, Illinois 60604 .

TO:
 TERRY L. MCCANN
STATEVILLE, C.C., WARDEN
ROUTE 53, P.O. BOX 112
JOLIET, Illinois 60434 .

PLEASE TAKE NOTICE THAT, on 2/24/2008, I FILED WITH THE CLERK OF THE ABOVE STATED COURT, PLAINTIFF'S CONSENT TO EXERCISE OF JURISDICTION AND letter TO STATEVILLE CORR. CENTER, WARDEN, TERRY L. MCCANN AND AFFIDAVIT OF William B. GASTON.

STATE OF Illinois )
      ) SS :
COUNTY OF Will  )

### CERTIFICATE OF SERVICE

I, ANDREW LAMON, SWEAR UNDER PENALTY OF PERJURY THAT, I SERVED A COPY OF THE ABOVE STATED DOCUMENTS HERETO ATTACHED, ON THE CLERK OF COURT, AND THAT, I SERVED A COPY OF THE DOCUMENT labled "letter TO TERRY L. MCCANN" BY placing IT IN THE MAIL AT THE STATEVILLE, CORR. CENTER, ROUTE 53, P.O. box 112, JOLIET, Illinois 60434, on FEBRUARY 24, 2008.

ANDREW LAMON, R-16056
ROUTE 53, P.O. box 112
JOLIET, Illinois 60434
 PLAINTIFF, PRO-SE .

LETTER TO TERRY L. McCANN

FEBRUARY 24, 2008

STATEVILLE, CORR. CENTER
ATTN: TERRY L. McCANN - WARDEN
ROUTE 53, P.O. box 112
JOLIET, Illinois 60434.

RE: ADDITIONAL EXTORTION ATTEMPTS / THREATS, ON MY FAMILY
VERIFIED bY LETTER, WRITTEN bY. INMATE DANIEL SMITH, #
B-44581, THAT MY FAMILY MAILED bACK TO THIS INSTITUTION
TO INTERNAL AFFAIRS IN JANUARY, 2008.

DEAR SIR, I SUBMIT THIS LETTER TO YOU, IN HOPE THAT YOU
WILL PUT AN ABRUPT END TO INMATE SMITH'S REIGN OF TERRO
EXTORTION AND THREATS OF PHYSICAL VIOLENCE.
WARDEN, AS YOU KNOW, THIS INSTITUTION IS A HOT-BED OF
INFORMATION, ALBEIT SOME, INSINUATION OR GOSSIP, TO THA
END THOUGH, INMATE WORKERS ARE THE SOURCE OF MOVING
INFORMATION. THAT SAID, AS SOON AS I WAS DENIED P.C.
WORD REACHED SMITH AND HE BEGAN ANEW HIS ATTEMP
TO FLEECE MONEY FROM ME, THIS TIME DIRECTLY THROUGH
MY FAMILY.
In JANUARY, 2008, SMITH, WROTE MY SISTER, NANCY LAMON, IN
BELOIT, WISCONSIN, DEMANDING MONEY, SPEWING INVECTIVES
AND MADE WHAT MY SISTER TERMED, "UGLY ALLEGATIONS".
About me.
MY SISTER, IN REGARDS TO SMITHS LETTER, FEARING FOR MY
SAFETY, IMMEDIATELY CALLED STATEVILLE, CORR. CENTER AN
INFORMED INTERNAL AFFAIRS OF HER FEARS AND SMITH'S
COMMENTS AND AT INTERNAL AFFAIRS REQUEST, MAILED
SMITHS LETTER TO INTERNAL AFFAIRS HERE AT STATEVILLE.
SUBSEQUENTLY THEREAFTER, ON JANUARY 16TH, 2008, I WAS
MOVED FROM X-HOUSE, P.C., TO F-HOUSE, GENERAL POPULATIO
AND UPON ARRIVING AT MY CELL, #418, SOMEONE YELLED OUT
"THATS DREW GOING INTO 418. He SNITCHED ON O-MONEY AN
RAN TO P.C., THEY DENIED HIM AND SENT HIM BACK, WE ARE
GONNA THROW YOUR BITCH-ASS OVER THE RAIL".
THAT NIGHT, I RECEIVED A LETTER FROM MY SISTER DETAIL
ING THE ABOVE-MADE STATEMENTS IN REGARDS TO SMITHS
EXTORTION DEMANDS.
I IMMEDIATELY WROTE INTERNAL AFFAIRS, L. TURNER, WHO
ON 1/21/08, CAME TO F-HOUSE AND I RELAYED ALL OF THE
ABOVE AND GAVE L. TURNER THE LETTER MY SISTER WROTE
ME. C/O TURNER ASSURED ME THAT HE'D HANDLE IT AND SENT
MY LETTER BACK, AND REQUEST P.C. FOR ME, TO DATE, 2 /28
2008. I'VE HEARD NOTHING BACK FROM C/O TURNER.

(1)

PLAINTIFF'S EXHIBIT "A"

In closing, sir, I live in complete fear for my life. I have not been out of cell. 413, for showers, rec. or any other reason not related to prison officials directing me to.

Moreover, C/O L. Turner can verify all that I've set forth herein. In addition, as a matter of law and in hope that you'll give deference to this letter and the statements herein. I've sworn to its contents. And respectfully request that you please place me in protective custody pending an investigation, unless you decline to investigate.

VERY TRULY YOURS,

*signature*

ANDREW LAMON. R-16056

STATE OF Illinois)
                  ) SS:
COUNTY OF WILL   )

### AFFIDAVIT

I, ANDREW LAMON, inmate at the Stateville. Corr. Center and affiant, do hereby declare and affirm under penalty of perjury as defined in 735 ILCS 5/1-109, 28 U.S.C. 1746 or 18 U.S.C. 1621, that everything contained herein is true and accurate to this best of my knowledge and belief.

I further declare and affirm that the contents of this foregoing document(s) is/are known to me and is/are accurate to the best of my knowledge and belief.

Finally, I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

SIGNED THIS 24TH DAY OF FEB.,
2008.

*signature*

ANDREW LAMON
AFFIANT

XC:

THE HONORABLE MARVIN E. ASPEN
MICHAEL W. DOBBINS. CLERK OF COURT

PLAINTIFF'S EXHIBIT "A"

(2)

STATE OF Illinois )
COUNTY OF Will     } SS:

## AFFIDAVIT

I, WILLIAM B. GASTON, R-43764, DO HEREBY DECLARE AND AFFIRM THAT THE FOLLOWING INFORMATION WITHIN THIS AFFIDAVIT IS TRUE AND CORRECT IN SUBSTANCE AND IN FACTS:

1. THAT I AM AN INMATE AT THE STATEVILLE, CORR. CENTER AND WAS ON JANUARY 16TH, 2008, HOUSED IN GENERAL POPULATION, F-HOUSE, CELL # 413.

2. THAT I DID INFACT HEAR INMATES IN F-HOUSE ON THE 16TH OF JANUARY, 2008, SAY "THAT THEY WERE GOING TO THROW Andrew LAMON, "DREW", OFF THE FOUR (4) GALLERY RAIL".

3. THAT I DID INFACT READ THE LETTER FROM DREWS SISTER, ON JANUARY 16TH, 2008, WHERE SHE STATED THAT "DREWS OLD CELLIE WAS DEMANDING MONEY FROM HER AND THAT SHE CALLED THIS PRISON AND THEN MAILED THE LETTER DREWS OLD CELLIE HAD WRITTEN HER, TO I.A."

4. THAT ON 1/21/2008, Andrew LAMON, WAS CALLED OUT OF HIS CELL BY C/O L. TURNER, IN REGARDS TO THE LETTER HE RECEIVED FROM HIS SISTER, BECAUSE I AM INMATE LAMON'S CELL-MATE, AND THAT, DREW HAS NOT LEFT THIS CELL, 413, FOR SHOWERS OR ANY REASON UNRELATED TO PRISON OFFICIALS CALLING HIM FOR FEAR, HE SAYS, OF THE GANG MEMBERS CARRYING OUT THEIR HIT ON HIM.

PURSUANT TO 28 USC 1746, 18 USC 1621 OR 735 ILCS 5/1-109, I DECLARE, UNDER PENALTY OF PERJURY, THAT EVERYTHING CONTAINED HEREIN IS TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE AND BELIEF. I DO DECLARE AND AFFIRM THAT THE MATTER AT HAND IS NOT TAKEN EITHER FRIVOLOUSLY OR MALICIOUSLY AND THAT I BELIEVE THE FOREGOING MATTER IS TAKEN IN GOOD FAITH.

SIGNED THIS 24TH DAY OF FEBRUARY, 2008.

_William B. Gaston_
WILLIAM B. GASTON, R-43764.
ROUTE 53, P.O. BOX 112
JOLIET, Illinois 60434.
AFFIANT

Plaintiff's Exhibit "B"

EXHIBIT C.

## <u>AFFIDAVIT</u>

STATE OF ILLINOIS )
COUNTY OF WILL   ) SS
              )

I, Lamar Ewing, hereby declare that:

1. That I am aquainted with Mr. Andrew Lamon from Pontiac Correctional Center where I first met him in 2006.

2. That on February 14, 2008, I was moved to the F. housing Unit, cell # 414, at the Stateville Correctional Center.

3. That upon arriving to cell # 414, I noted that Mr. Lamon was housed in cell # 413.

4. That Four Gallery inmates are allowed one showed per week, and yard recreation twice per week. However, I have observed Mr. Lamon refuse these activities repeatedly since my being housed next door to him.

5. I have observed that several inmates living in the same area, repeatedly and on an daily basis calls Mr. Lamon issuing threats, taunting, and using profanity. Specifically, on several occasions I have heard inmates state that, we gone throw your ass off 4 gallery, if we catch you out that cell. Since my being housed on 4 gallery, I have had opportunity to identity several of these inmates and based upon their uses of gang signs, I believe they are gang affiliated

6. Several times I have told Mr. Lamon about these matters and his need to inform staff of these threats. However, Mr. Lamon has advised me that he has done so, yet officials ignore his request for assistance. Therefore, it is my belief that Mr. Lamon fears for his safety and avoid contact with other inmates.

[1]

Pursuant to 18 USC 1621, I, Lamar Ewing declare that
I have read the afore stated information and know the
information to be true and correct.

DATE  2 - 28 - 08

BY: _Lamar Ewing_
        AFFIANT
        Lamar Ewing

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHILLIP MEEKS,                        )
                                      )
                    Plaintiff,        )
                                      )
          v.                          )
                                      )
MICHAEL LANE, Director of Illinois    )     No. 75 C 96
Department of Corrections; LEO        )
MEYER, Deputy Director of Adult       )
Institutions; RICHARD DeROBERTIS,     )
Warden of Stateville Correctional     )
Facility; J.W. FAIRMAN, Warden of     )
Pontiac Correctional Facility; and    )
JAMES THEIRET, Assistant Warden       )
for Operations of Pontiac,            )
                                      )
                    Defendants.       )

## CONSENT DECREE

This action was filed by plaintiff Phillip Meeks
on January 8, 1975, pursuant to 42 U.S.C. Section 1983 and
28 U.S.C. Section 2201, 2202 and 1343. A supplemental
complaint was filed on January 14, 1976, following which,
pursuant to 28 U.S.C. Section 2281, a statutory three-judge
court was empanelled.

An amended complaint was filed on June 23, 1976,
which challenged the constitutionality of the Administrative
Regulations of the Illinois Department of Corrections ("the
Department"), promulgated pursuant to Ill. Rev. Stat. ch. 38,
§ 1003-7-4. Plaintiff alleged that existing statewide
regulations failed (1) to protect the plaintiff from unprovoked

attacks by other inmates, (2) to ensure living conditions to inmates confined in protective custody quarters which were consistent with the Eighth Amendment to the Constitution, and (3) to ensure inmates involuntarily placed and held in protective custody status due process of law.

The amended complaint sought compensatory and punitive damages for plaintiff's personal injuries and lost wages. It also sought injunctive relief requiring the adoption of statewide regulations by the Department which would ensure minimal inmate security, would establish minimum standards for protective custody confinement and would ensure due process rights to persons involuntarily placed and kept in protective custody.

The defendants, while denying the allegations of the amended complaint, acknowledge that inmates in the custody of the Department have a right to be afforded protection against excessive and unprovoked violence upon their persons from other inmates, that inmates held in protective custody should be afforded certain minimal recreational, educational, vocational and religious opportunities and, if held involuntarily for purposes of their own protection, should be afforded due process of law in determining whether and under what circumstances they may be returned at their own request to the general prison population.

By agreement of the parties, the Court has not made any findings of fact or conclusions of law or conducted any evidentiary hearings with regard to the merits of plaintiff's claims.

In order to effect an amicable settlement of the
issues involved in this action, the parties agree and the
Court enters the following decree:

Defendants agree to promulgate Administrative
Regulations and Directives designed to implement the following
provisions, which are applicable to all of the maximum
security institutions in the Department, except the Dwight
Correctional Center.

A.    SECURITY.

1.    Inmates newly admitted to the custody of the
Department shall be evaluated at a Reception and Classifica-
tion Center in accordance with a classification process
which shall consider, among other factors, each inmate's
age, physical size, likely level of dangerousness and physical
agressiveness towards staff and other inmates, special
educational or vocational training needs, protective custody
needs and known history of significant gang involvement,
either as a member, an affiliate, or a victim. Placement of
an inmate in an institution will be determined in accordance
with this process. Review of an inmate's classification
shall occur at least once per year.

2.    After assignment to an institution, and
during the first ten working days at that institution, an
effort shall be made to ascertain whether an inmate, because
of his physical or emotional characteristics, prior criminal
activity or associations or any special circumstances, is in

need of special protection at that institution and what extraordinary means, if any, may be necessary to protect him while in the institution.  An inmate shall be personally interviewed as a part of this process, and be given an opportunity to discuss his needs for protection.

3.   Each maximum security prison in the Department except Joliet shall maintain a housing area for those inmates who have established to the satisfaction of prison officials that, because of their age, size, nature of crime, prior testimony, gang involvement or other like factors, they may be in need of special protection and that they are not likely to behave in a manner so as to threaten or intimidate other residents.  All inmates classified by a Reception and Classification Center as "medium security" shall be considered for these areas.

Inmates in such housing areas shall have the same opportunities as other inmates in other housing areas of the general population for visitation, telephone and commissary privileges, job assignments, vocational and educational assignments, recreation, access to prison libraries, access to religious services and to all other institutional programs.

4.   Inmates in such housing areas shall be fed separately from other inmates in the general prison population.  This may be effected either by serving them in different physical areas or at a different time of day than the remainder of the general prison population.

5.    Defendants shall use reasonable efforts to
ascertain the identities of those inmates who have been or
are involved in significant gang activity as a member or a
victim.  These efforts shall include but are not limited to
continued routine contact with state and local law enforce-
ment agencies and gang intelligence units, exchange of
information between institutions within the Department and
coordination of investigative activities.  The identities of
inmates having any significant gang involvement and the
nature of that involvement shall promptly be made known to
wardens and assistant wardens.  This information shall be
shared with all correctional staff of Captain level and
above at their periodic meetings with the warden.

6.    Information concerning a physical attack on
an inmate, including the name(s) of the assailant(s) if
known, shall be placed in the master files of any victim of
such an attack and this information shall be considered in
all cell placements of such inmates.  This information also
shall be considered prior to any transfer to another insti-
tution.

B.    PROTECTIVE CUSTODY.

1.    Each maximum security institution will have a
provision for protective custody placement in a protective
custody area.  ("PCA.")

2.    PCA's shall in no event be physically located
on the same gallery as disciplinary segregation facilities,

and inmates assigned to segregation shall not be afforded access to any area within the PCA's.

3.    Inmates confined in PCA's shall be offered the opportunity for seven hours per week of out-of-cell recreation, excluding transport time. Officials shall make a good faith effort to investigate ways in which inmates held in PCA's may receive more than the minimum recreational periods required in this section, and, where feasible, to provide more than the minimum.

4.    Inmates confined in PCA's shall be afforded the opportunity for access to the general library at least one hour per week, and to the prison law library for at least four hours per week. However, in the event that separate facilities do not exist for use by protective custody inmates or where demand exceeds the availability of separate facilities, law clerks will be made available to do research and obtain copies of requested documents from the law library or general library. In addition, the services of inmate law clerks to do legal research and to prepare legal documents shall be made available to those inmates confined to PCA's who are unable to do their own research. Books and magazines will be delivered to inmates in PCA's by way of library clerks who will circulate within the unit on a daily basis during library operating days.

5.    Inmates confined in PCA's shall be afforded the opportunity to enjoy telephone and commissary privileges

-6-

and to receive visitors on an equal basis and with the same frequency as inmates confined in the general population. Where the warden deems it impracticable to have PCA inmates taken to commissary, those inmates shall be permitted, on an equal basis and with the same frequency as inmates confined in the general population, to place orders from the commissary and have commissary items delivered to their cells under the supervision of a prison official.

6.   Inmates confined in PCA's shall not be required to receive visitors or otherwise move outside their protective custody cells while restrained in cuffs or belts or any other restraining device for any reason that would not require restraints for those inmates if they were assigned to the general population.

7.   Blankets, sheets, toiletries, showers, clean laundry, clean clothing, and cleaning agents and utensils shall be available to inmates confined in PCA's on an equal basis and with the same frequency as inmates assigned to the general prison population.

8.   Inmates confined in PCA's shall be afforded the opportunity to enjoy educational opportunities commensurate with those available to inmates in the general population. Literacy training shall be available.  An inmate who wishes to pursue his General Equivalency Degree shall be provided with the necessary materials and instructional assistance upon request.  Enrollment in correspondence courses shall be

permitted on an equal basis with that permitted for inmates
confined in the general population.  For those inmates
confined in PCA's for longer than 30 days, college credit
courses will be offered, provided that at least 12 qualified
inmates request to enroll in such a course, subject to the
ability of the Department to contract for such courses.  The
Department will make good faith efforts to execute such
contracts.  Where available to inmates assigned to the
general population, TV courses will be made available to
inmates in PCA's.

     9.    Within 12 months following entry of this
decree the Department shall formulate a plan to provide job
opportunities to inmates who have been placed in PCA's for
more than 30 days.  This plan shall be implemented within 12
months following the formulation of the plan.

     10.   Inmates confined in PCA's shall be provided
food of comparable quality, quantity, and temperature as
that provided to inmates assigned to the general population.
All meals served in the cells shall be served under the
immediate and direct supervision of a prison official.  At
least one meal per day shall be served outside the cells,
except at Stateville.  With regard to Stateville, the
Department will make a good faith attempt to locate an area
which would be suitable for use as a protective custody
dining area.  If any new facilities are constructed at
Stateville, the Department will consider using them for
protective custody dining.

11.  Inmates confined in PCA's shall be offered
the opportunity to attend a communal religious service
outside their cells once per week.

12.  Inmates confined in PCA's shall be permitted
hobbycraft items in their cells unless these items are not
permitted for reasons that would be equally applicable to
inmates assigned to the general population.

13.  The provisions of paragraphs 5, 6 and 7 of
Section B of this decree shall also apply to any inmate
placed in an area other than a PCA for his own protection.
The remaining provisions of Section B of this decree shall
also apply to any inmate who has been held in an area other
than a PCA for his own protection for more than 30 days.

C.   PLACEMENT AND RETENTION IN PROTECTIVE CUSTODY.

1.  Inmates who believe that their safety and
security are being threatened in the general population may
request protective custody placement.  At least once every
30 days, a correctional counselor shall interview each
inmate confined to a PCA or to any area other than a PCA
where inmates are held for their own protection to determine
the necessity of their continued placement there.  With
regard to any inmate who has been confined to a PCA or to
any area other than a PCA for his own protection for six
months and who has requested a transfer to another institu-
tion, the Assignment Committee shall recommend and the
Transfer Coordinator shall seriously consider the transfer,

subject to available space in the transferee institution and
subject to the provisions of Administrative Regulation 819
and transfer directives.

2.   In the event that any employee of the Depart-
ment becomes aware of specific circumstances which might
threaten the safety or security of an inmate, the employee
shall transmit this information to the Warden or his designee.

3.   In the event the Warden or his designee
determines that there exists a clear and immediate threat to
the safety of an inmate, the Warden or his designee shall
offer the inmate placement in protective custody.  If the
inmate refuses, the Warden or his designee may decide to
place an inmate involuntarily in a PCA or in any area other
than a PCA where inmates are held for their own protection.
In this event, the inmate shall be provided with notice of
the decision and a hearing before the Assignment Committee
within three working days of such placement.

The Assignment Committee shall make a recommenda-
tion to the Warden as to action that should be taken with
respect to the inmate (e.g. continued protective placement
in a PCA or other area for a fixed number of days, release
from protective confinement to the general population,
transfer to another institution, etc.) and shall deliver a
written report, including the recommendation, to the Warden
and to the inmate within seven working days after the hearing.

Every 14 days after the original hearing the inmate shall appear before the Assignment Committee which shall determine if continued placement in a PCA or other area is necessary to maintain the inmate's safety and security.  If the Committee makes such a determination, it shall again make the report and recommendation outlined above. Upon receipt of the report and recommendation, the Warden shall render his decision within 3 working days.  If the inmate is dissatisfied with the Warden's decision, the inmate may initiate a grievance with the Administrative Review Board.  The Administrative Review Board shall render its decision on the grievance within 21 days.

4.    In evaluating whether inmates shall be retained in a PCA or in other areas where they are held for their own protection, the Assignment Committees, Wardens, and the Administrative Review Board shall pursue the goal of returning inmates to an appropriate general population as soon as feasible, considering the inmates' needs for protection and the alternatives available.

D.    ADMINISTRATION.

1.    Full compliance with the provisions of this decree shall be achieved on or before July 1, 1984.

2.    The parties shall each select two members to be placed on an independent monitoring panel which will report twice yearly to this Court until July, 1984, on the progress being made toward the implementation of the above

provisions. The four members thus selected shall choose a fifth, who will act as Chairman.  The Department will reimburse the out-of-pocket expenses of the members of the monitoring committee incurred while in Illinois at the same rate payable to state employees.

In addition to the foregoing, the parties agree that, in full settlement of the damage issues presented in this case, defendants shall pay to plaintiff $5,000.  They shall also pay attorneys' fees and costs of $25,000.  All other fees and costs are waived.  The defendants assign any rights to payments under Ill. Rev. Stat. ch. 127, §§ 1301 et seq. to the plaintiff.  It is understood that collection of the $25,000 in attorneys' fees and costs will first be attempted through the normal procedures of the Illinois Court of Claims.  The sum of $5,000 shall be paid to plaintiff no later than August 31, 1981.

ENTERED THIS 2̲0̲ DAY OF JULY, 1981

Luther M. Swygert
Judge of the U.S. Court of Appeals
For the Seventh Circuit

Julius J. Hoffman
Senior District Judge

Thomas R. McMillen *
District Judge

Agreed:

Michael P. Lane
Director
Illinois Department of Corrections

Tyrone C. Fahner
Attorney General of Illinois
by Paul P. Biebel, Jr.
First Assistant Attorney General

Melbourne A. Noel, Jr.
Attorney for Defendants

Joan M. Hall
Attorney for Plaintiff, Phillip Meeks

*I agree with the substance of the foregoing Consent Decree
but find some technical problems with it which I will reserve
comments on until enforcement proceedings, if any.

-13-

**V.    Relief:**

State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.

Wherefore, Plaintiff pray this Honorable Court, "substantiate his claims" and direct that he be placed in Protective custody, grant him Punitive damages and "such other relief as it may appear Plaintiff is entitled".

**VI.    The plaintiff demands that the case be tried by a jury.**    ☑ YES    ☐ NO

## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief.  I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this _____ day of June , 20 08

_____
(Signature of plaintiff or plaintiffs)

Andrew Lamon
(Print name)

R - 16056
(I.D. Number)

Route 53, P.O. box 112
Joliet, Illinois 60434.
(Address)

6

Revised 9/2007

## Certificate of Service

The undersigned certifies that on the __4th__ day of June, 2008, a copy of the foregoing instrument was served upon the following:

Hon. Marvin E. Aspen
219 South Dearborn Street
Chicago, Illinois 60604.

Michael W. Dobbins
U.S. District Court Clerk
219 South Dearborn St.
Chicago, Illinois 60604.

Lisa Madigan
Attorney General, c/o Camile Lindsay
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601.

By depositing the same in the U.S. Mail at the Stateville, Correctional Center, Route 53, P.O. box 112, Joliet, Il 60434.

Andrew Lamon, R-16056
Plaintiff, Pro-se.

[4]