# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW LAMON (#R-16056) | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 0910 |
| | ) | |
| TERRY McCANN, | ) | Marvin E. Aspen |
| | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, correctional officials, violated the plaintiff's constitutional rights by acting with deliberate indifference to his safety. More specifically, the plaintiff alleges that he was denied placement in protective custody at the Stateville Correctional Center despite the defendants' knowledge that he faced imminent danger from enemy gang members in the prison's general population. This matter is before the court for ruling on the sole remaining defendant's motion for summary judgment. For the reasons stated in this order, the motion is granted.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000). However, Rule

56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## FACTS

The defendant filed a statement of uncontested material facts pursuant to Local Rule 56.1(a)(3) (N.D. Ill.). The defendant also served on the plaintiff the mandatory notice under Local Rule 56.2, explaining the requirements of the Local Rules and warning the plaintiff that his failure to respond with appropriate evidentiary support could result in entry of judgment against him. (Document no. 117, Notice to Pro Se Litigant.) Notwithstanding the admonition, the plaintiff's response, captioned "Genuine Issue of Material Fact," fails to comply with the court's Local Rules. The plaintiff does not respond to the defendant's statement of facts; he has simply added two additional facts and makes several legal arguments, without citations to the record in support of his factual assertions. But unsupported statements in a brief are not evidence and cannot be given any weight. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

The plaintiff's failure to controvert the facts as set forth in the defendant's statement results in those facts being deemed admitted. *Id.* A litigant's failure to respond to a Local Rule 56.1 Statement results in the court considering the uncontroverted facts as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The court may disregard statements and responses that do not properly cite to the record. *See Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). The court need not "scour the record to locate evidence supporting a party's legal argument." *Argyropoulos v. City of*

*Alton*, 539 F.3d 724, 740 (7th Cir. 2008), *quoting Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005).

Although courts must construe *pro se* pleadings liberally, see *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006), a plaintiff's *pro se* status does not absolve him from complying with these Local Rules. *See Greer v. Board of Ed. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.") A plaintiff's self-serving statements, which are speculative and unsupported by specific, concrete facts reflected in the record, cannot preclude summary judgment. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999).

Because the plaintiff is proceeding *pro se*, the court will consider the factual assertions he makes in his opposing brief, but only to the extent that the plaintiff could properly testify about the matters asserted at trial–that is, only with respect to those facts within the plaintiff's personal knowledge. *See* Fed. R. Evid. 602. The court therefore finds that the following facts, as set forth by the defendant in his uncontested statement of facts and supported by citations to the record, are undisputed [the court has also included the plaintiff's additional facts]:

The plaintiff, a state prisoner, was an inmate at the Stateville Correctional Center at all times relevant to this lawsuit. (Amended Complaint. p. 2.) The defendant, Terry McCann, was Stateville's warden during the time period in question. (*Ibid.*)[1]

---

[1] All other defendants have previously been dismissed either voluntarily by the plaintiff or by court order.

The plaintiff was transferred from the Pontiac Correctional Center to the Stateville Correctional Center in or around August of 2006. (Defendants' Exhibit A, Deposition of Andrew Lamon, at p. 19.) The plaintiff was initially placed in "X House Intake" for about three weeks, as are all new arrivals at Stateville. (*Id.*, p. 51; Defendant's Exhibit C, Affidavit of Jerry Baldwin, ¶ 7.)

X House is comprised of four groups of inmates on five separate wings: intake (i.e., inmates who are going through orientation); protective custody group 2 (inmates approved for placement in protective custody); protective custody group 3 (inmates who have requested protective custody but are awaiting a final decision from the institution); and protective custody group 4 (inmates who have been denied protective custody at the institutional level but are awaiting a final determination by the Administrative Review Board). (Baldwin Affidavit, ¶¶ 6-10.)

Inmates in X House are kept separate from all other prisoners in the general population, segregation, and inmates on court writs. (*Id.*, ¶ 11.) In addition, the inmates in protective custody groups 2, 3 and 4 are kept separate from the intake inmates. (*Ibid.*)

Upon completing his orientation, the plaintiff was moved to X House protective custody, presumably because he had sought protective custody status at Pontiac. (Plaintiff's Dep., pp. 19, 51.) The plaintiff remained in X House protective custody group 3 and/or 4 until about November 2006. (*Id.*; Defendants Exhibit E, Affidavit of Timothy Clevenger, at ¶ 3; Baldwin Affidavit, ¶ 14.)

In November 2006, the plaintiff had a hearing before the Administrative Review Board regarding his request for placement in protective custody. (Exhibit 3 to Plaintiff's Deposition.) At the ARB hearing, the plaintiff was still unable to name any inmate who was currently threatening

him. (Plaintiff's Dep., pp. 21, 23.) Rather, the plaintiff's request for placement in protective custody was based on the 2004 attack at the Menard Correctional Center by "high-ranking gang members." (*Id.*, pp. 21-22, 23.) However, to the plaintiff's knowledge, his inmate assailants were not housed at Stateville. (*Id.*, p. 22.) The plaintiff had never been threatened or harmed during the two years he spent at the Pontiac Correctional Center between stints at the Menard and Stateville Correctional Centers. (Plaintiff's Dep., pp. 6, 24.)

In addition to hearing testimony from the plaintiff, the Board reviewed records from clinical services and internal affairs, who were unable to substantiate a need for protective custody placement. (Exhibit 3.). The ARB's findings read, in pertinent part:

> Grievant was transferred to the current facility from Pontiac Correctional Center for the reasoning: Segregation release. An affiliation with a Security Threat Group is not noted. The Board notes Grievant has declared no enemies at Stateville Correctional Center and has not been declared as an enemy.
>
> The Board reviewed the Protective Custody vote sheet dated August 23, 2006. Grievant requested Protective Custody placement, stating the following: Offender stated he keeps getting beaten up by gangs, specifically, the Black P-Stones and the Gangster Disciples. The no-vote rationale indicates no sufficient verifiable information as to warrant Protective Custody placement. The CAO concurred on September 1, 2006.
>
> Offender's statement: Offender Lamon stated he did not get along with his cell mate at Pontiac and refused housing. He was placed in segregation and transferred to Stateville upon release. He stated he was beaten up in 2004 at Menard. He stated he is from Iowa and is not affiliated with any STG.

(*Id.*)

The plaintiff filed a renewed request for protective custody in October of 2007. (*Id.*, pp. 10-11.) At the time, the plaintiff was experiencing problems with his cellmate, Daniel Smith. (*Id.*, p. 11.) As a result, the plaintiff and Smith were put on

-5-

a "Keep Separate" list. (*Id.*.) The plaintiff never encountered Smith again after the keep separate order was put in place. (*Id.*, pp 11-12.)

While the plaintiff's request for placement in protective custody was under review, he was housed in X House protective custody units 3 and 4. (*Id.*, p. 10.) The plaintiff remained there from October 2007 through January 2008 pending a final decision. (*Ibid.*)

Another hearing before the Administrative Review Board was held on December 20, 2007. (*Id.*, p. 32; *see also* Exhibit 5 to Plaintiff's Deposition.) At the hearing, the plaintiff identified Daniel Smith as his only enemy. (Plaintiff's Dep., p. 33; Exhibit 5.) The plaintiff conceded that Smith was the only individual threatening him. (*Ibid.*) The ARB consequently denied the plaintiff protective custody, concluding that the keep separate order as to Smith was sufficient to protect the plaintiff. (Exhibit 5; Plaintiff's Dep., p. 32.)

Pursuant to the ARB's decision, the plaintiff was released to the general population, in "F House," in early January 2008. (Plaintiff's Dep., pp. 10, 34.) The plaintiff wrote letters to the defendant and others protesting that he faced "excessive risk of serious physical harm" in F House from unidentified "other prisoners." (Exhibit 7 to Plaintiff's Deposition.) The letters named no particular enemies.

The plaintiff initiated this suit on February 12, 2008. (*See* Court's Docket.)

On April 12, 2008, the plaintiff filed an emergency grievance requesting protective custody once again. (Exhibit 1 to Plaintiff's Deposition.) The plaintiff asserted that unnamed "gang members" had threatened to hurl him from the fourth four gallery "to his death" if he left his cell. (*Id.*) The grievance did not name the individuals who were allegedly threatening him, or even identify a particular gang. (*Id.*) (Plaintiff's Dep., p. 34.) Neither the plaintiff's counselor nor an

institutional investigator was able to validate the plaintiff's claims. (Baldwin Affidavit, ¶ 17; Defendant's Exhibit D, Affidavit of Leslie Turner, ¶ 6.)

Upon the filing of his grievance, the plaintiff returned to X House protective custody pending resolution of his request. (Plaintiff's Dep., p. 35.) Accordingly, the grievance officer's response to the plaintiff's grievance was, "You are in PC now." (Exhibit 1.) The plaintiff was unable to provide the defendant--or any other staff member at Stateville, or the Administrative Review Board--the names of any individuals who were threatening him. (*Id.*, pp. 38, 39, 46-47.)

In September 2008, the plaintiff's then-cellmate prepared an affidavit at the plaintiff's behest. (Exhibit 6 to Plaintiff's Deposition, Affidavit of Michael Dudley.). In the affidavit, Dudley professed to be a "security enforcer" for the Gangster Disciples and confirmed that there was a "hit" out for the plaintiff. (*Id.*, ¶¶ 3 and 4.)

Though finding it "difficult to verify the allegations of threats made against Offender Lamon," the Administrative Review Board ultimately approved him for retention in protective custody on November 14, 2008. (Defendants' Exhibit B, ARB Summary dated January 21, 2009.) The plaintiff was later transferred to the Pontiac Correctional Center. (*See* Plaintiff's Change-of-Address Notice dated June 22, 2009. (Document #112.)) During his tenure at Stateville, the plaintiff was never assaulted by anyone other than his cellmate, Daniel Smith. (Plaintiff's Dep., pp. 49-50.)

## DISCUSSION

No material facts are in dispute, and the defendant has established that he is entitled to judgment as a matter of law. Even viewing the record in the light most favorable to the plaintiff, no reasonable person could conclude that the defendant violated the plaintiff's constitutional rights.

The Constitution "imposes upon prison officials the duty to take reasonable measures to guarantee the safety of the inmates." *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005), *citing Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations omitted). The obligation to protect encompasses a duty "to protect prisoners from violence at the hands of other prisoners." *Brown*, 398 F.3d at 909; *Farmer*, 511 U.S. at 834. To establish an Eighth Amendment claim that correctional officials acted with deliberate indifference to his safety, the plaintiff must show that: (1) he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) defendant-official acted with "deliberate indifference" to that risk. *Id.* These are questions for a jury, unless no reasonable juror could conclude that the defendant recognized a substantial risk to the plaintiff. *See, e.g., Abney v. Monahan*, 458 F. Supp. 2d 614, 620 (N.D. Ill. 2006) (Bucklo, J.)*, citing Riccardo v. Rausch*, 375 F.3d 521, 526 (7th Cir. 2004).

**A. Objective Prong**

To satisfy the objective prong, a plaintiff must demonstrate not only that he experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that serious harm might actually occur. *Id.* "When [Seventh Circuit] cases speak of a 'substantial risk' that makes a failure to take steps against it actionable under the Eighth or Fourteenth Amendment, they also have in mind risks attributable to detainees with known 'propensities' of violence toward a particular individual or class of individuals; to 'highly probable' attacks; and to particular detainees who pose a 'heightened risk of assault to the plaintiff.' " *Brown*, 398 F.3d at 911. This general definition of "substantial risk" includes, of course, "risks so great that they are almost certain to materialize if nothing is done." *Id.*

In the case at bar, the plaintiff has failed to establish the existence of an objectively substantial risk. During at least two complete rounds of multi-level review while at Stateville (plus another commenced prior to his transfer there), the plaintiff was unable to articulate more than generalized fears for his safety. In *Butera v. Cottey*, 285 F.3d 601 (7th Cir. 2002), an inmate's statements that he was "having problems on the block" and "I needed to be []moved" were held to be insufficient to give notice of a specific threat. 285 F.3d at 606; *see also Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) (no liability where prisoner only said he was "afraid" and "wanted to be moved," without disclosing to prison officials who had assaulted him, why he had been assaulted, or whether he continued to feel threatened by the assailants). "Such vague information [does] not put the jail officers on notice of a specific threat." *Id.* Even a more dire, but equally generalized, statement that a prisoner "was afraid for his life" was found to be insufficient to alert correctional officers to a specific threat. *See Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008).

The mere presence of menacing individuals at a maximum security facility was not, alone, enough to create an objectively serious risk of harm. Nor did the plaintiff's personality conflict with a cellmate amount to a substantial risk; nor did a prior attack, years earlier, at Menard. Regrettably, "[p]risoners are dangerous (that's why many are confined in the first place). . . . Some level of brutality and sexual aggression among them is inevitable no matter what the guards do." *Birch v. Jones*, No. 02 C 2094, 2003 WL 21210107, *3 (N.D. Ill. May 21, 2003) (Bucklo, J.), quoting *McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir. 1991). "[A]n unfortunate random act of violence in a prison . . . does not impose liability on prison officials." *Washington v. LaPorte County Sheriff's Department*, 306 F.3d 515, 519 (7th Cir. 2002). Even though the plaintiff eventually obtained

protective custody approval as requested, the ARB specifically noted the absence of any verifiable threats. The plaintiff simply has not shown that a substantial risk of serious harm existed.

**B. Subjective Prong**

Even assuming (without finding) that the plaintiff faced an objectively significant risk of harm, he cannot establish Warden McCann's deliberate indifference to that risk.

In order to satisfy the subjective prong, a plaintiff must show that the defendant acted with deliberate indifference to the substantial risk of serious harm. *Farmer*, 511 U.S. at 838; *Brown*, 398 F.3d at 913. The defendant "must both be aware of the facts from which an inference could be drawn that a substantial risk of harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 838; *Brown*, 398 F.3d at 913; *Riccardo*, 375 F.3d at 525. The subjective prong has two subparts: (a) knowledge of the risk, *Brown* at 913, and (b) a disregard of that risk. *Id.* at 916. Although this is a subjective test, it may be proven through circumstantial evidence. *Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.") (internal citation omitted). The relevant inquiry is whether correctional officials actually knew about the danger that the plaintiff faced, not whether a reasonable official should have known. *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999).

Again, even taking the facts in the light most favorable to the plaintiff, the record does not support an inference that the defendant acted with deliberate indifference to a substantial risk of known harm. It is undisputed that the plaintiff started out in X House as a precautionary measure and that he was placed back in X House both times he requested protective custody status.

Notwithstanding the plaintiff's assertion that unapproved and approved protective custody assignment differ in some way, the fact remains that out of concern for the plaintiff's safety, he was afforded n some sort of protective custody status while his requests for permanent placement underwent review. The plaintiff was in some form of protective custody between August 11, 2006, and November 16, 2006; from October 17, 2007, through January 16, 2008, and from April 30, 2008, until he left the facility. (Baldwin Affidavit, ¶ 14.)

The prison staff likewise acted immediately to separate the plaintiff and his cellmate once the plaintiff reported a problem between the two. The facility's reasonable responses to the plaintiff's concerns whenever he expressed fears for his safety belie any inference of deliberate indifference.

Furthermore, as noted *supra*, even in ultimately approving the plaintiff's request to remain in protective custody, the Administrative Review Board, after reviewing all available information, was unable to verify any actual threat, instead finding only that the plaintiff "has difficulty adjusting within general population due to pressure from other offenders." (Defendant's Exhibit B.) As the plaintiff himself was unable to identify specific enemies, and no other prison official could corroborate alleged threats to his person, no knowledge can be imputed to the defendant. *See, e.g., Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005) (explaining that to prove deliberate indifference, a plaintiff must show "the equivalent of criminal recklessness"); *Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515, 518 (7th Cir. 2002) (confirming that mere or even gross negligence will not support a finding of deliberate indifference, as it requires officers to have actual knowledge of the risk). Under the facts of this case, no trier of fact could conclude that the defendant exposed the plaintiff to an unreasonable risk of harm by failing to approve him for protective custody.

**C. No Physical Injury**

Finally, the plaintiff cannot recover monetary damages for any unrealized fears for his safety. As the court previously advised the plaintiff, *see* Minute Order of March 6, 2009, federal law provides that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see also Zehner v. Trigg*, 133 F.3d 459, 462-63 (7th Cir. 1997) (upholding the PLRA's limitation on damages in the absence of a showing of physical injury); *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003) ("We believe that . . . § 1997e(e) forecloses an action for nominal or punitive damages for an Eighth Amendment violation involving no physical injury"). In the case at bar, the plaintiff does not suggest that he was ever actually harmed by perceived enemies before he was placed in protective custody. [There is no suggestion that the plaintiff's personality clash with his cellmate, who choked him, was in any way related to purported death threats by gang members.] Consequently, the plaintiff is not entitled to damages even assuming *arguendo* that the defendant did somehow act with deliberate indifference.

In short, the court is satisfied that no outcome-dispositive facts are in dispute; the court further concludes that the defendant is entitled to judgment as a matter of law. The warden's initial denial of the plaintiff's request for placement in protective custody did not violate his Eighth Amendment rights. Summary judgment is accordingly granted in favor of the defendant.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion for summary judgment [#114] is granted in all respects. The Clerk is directed to enter judgment in favor of the defendant pursuant to Fed. R. Civ. P. 56. The case is terminated. The status conference previously scheduled for October 8, 2009, at 10:30 a.m. is vacated.

If the plaintiff wishes to appeal this decision, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). The plaintiff is warned that if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

Enter: /s/ Marvin E. Aspen
MARVIN E. ASPEN
United States District Judge

Date: September 28, 2009